UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATALIE M. DAVIS,

Case No. 20-10835

Plaintiff,

George Caram Steeh
United States District Judge

v.

COMMISSIONER OF SOCIAL
SECURITY,

Curtis Ivy, Jr.
United States Magistrate Judge

Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 20, 25)**

Plaintiff Natalie M. Davis brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her application for a period of disability and Disability

Insurance Benefits under the Social Security Act (the "Act"). This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 20), the Commissioner's cross-

motion for summary judgment (ECF No. 25), Plaintiff's reply (ECF No. 29) and

the administrative record (ECF No.15).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 20), **GRANT** Defendant's

motion for summary judgment (ECF No. 25), and **AFFIRM** the Commissioner's
decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff previously filed an application for disability insurance benefits on
March 5, 2015.  After her claim was initially denied, she filed an appeal which was
heard by an Administrative Law Judge ("ALJ").  That ALJ issued a final decision
on January 6, 2017, finding Plaintiff not disabled.  (ECF No. 15-5, PageID.609-
19).  Plaintiff did not further appeal that determination.

Plaintiff filed a subsequent application for disability insurance benefits on
December 7, 2017, alleging disability beginning on January 7, 2017, at the age of
33.  (ECF No. 15-2, PageID.103, 115).  In her disability report, she listed a number
of medical conditions which negatively impacted her ability to work.  (ECF No.
15-8, PageID.754).  The conditions included: mental disorders (depression,
anxiety), headaches, and pain associated with her knees, back and feet.  (*Id*.).  Her
application was denied on March 21, 2018.  (ECF No. 15-2, PageID.103).

Plaintiff requested a hearing by an ALJ.  (ECF No. 15-6, PageID.667-68).
On February 20, 2019, ALJ Latanya White Richards held a hearing, at which
Plaintiff, who appeared with counsel, and a vocational expert ("VE"), Doug Lear,
testified.  (ECF No. 15-4, PageID.566-604).  The ALJ determined there was new

and material additional evidence or changed circumstances since the previous

ALJ's decision, and as such, the ALJ concluded she was not bound by the previous

decision.  (ECF No. 15-2, PageID.106).  On April 11, 2019, ALJ Richards issued

an opinion, which determined that Plaintiff was not disabled within the meaning of

the Social Security Act.  (*Id.* at PageID.103-17).

Plaintiff submitted a request for review of the hearing decision.  (ECF No.

15-6, PageID.712-13).  However, on January 8, 2020, the Appeals Council denied

Plaintiff's request for review.  (ECF No. 15-2, PageID.91-94).  Thus, the ALJ's

decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on March 31, 2020.

**B.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 7, 2017, the alleged onset date.  (ECF No.

15-2, PageID.106-07).  At **Step 2**, the ALJ found that Plaintiff had the following

severe impairments: status post ORIF lateral malleolus fracture of the left ankle;

lumbar and cervical spine disorder; depressive disorder; anxiety disorder; and

borderline personality disorder.  (*Id.* at PageID.107-08).  At **Step 3**, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments.  (*Id.* at

3

PageID.108-110).  **Between Steps 3 and 4** of the sequential process, the ALJ

evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that

Plaintiff had the RFC:

> to perform light work . . . except she is limited to
> standing and walking for only 2 hours in an 8 hour day,
> and requires the use of a cane for ambulation.  She can
> only occasionally climb ramps and stairs, and never
> climb ladders, ropes, or scaffolds.  She is able to
> occasionally balance, stoop, kneel, crouch, and crawl.
> She must avoid exposure to unprotected heights and
> hazardous machinery [*i.e., environmental limitations*].
> She is able to perform simple, routine tasks and can make
> simple work related decisions [*i.e., understanding &
> memory and/or sustained concentration & persistence
> limitations*].  She can adapt to occasional work place
> changes and is limited to only occasional contact with
> coworkers, supervisors, and the general public [*i.e.,
> adaptation limitations and social interaction limitations*].

(*Id.* at PageID.110-15).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.115).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as assembler, electrical accessories; routing clerk; and

garment folder.  (*Id.* at PageID.115-16).  Thereafter, the ALJ concluded that

Plaintiff had not been under a disability, as defined in the Social Security Act,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

since January 7, 2017, through the date of the decision.  (*Id.* at PageID.116-17).

## C.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."  *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

## D.    Standard of Review

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff appeals the ALJ's decision regarding both her mental and physical impairments. As to the former, she argues (1) the ALJ failed to consider her consistently low global assessment functioning ("GAF") scores, (2) she medically equals listings 12.04 and 12.06, and (3) the RFC fails to account for Plaintiff's mental impairments. As to her physical impairments, Plaintiff argues (1) the hypothetical question to the VE failed to consider the impact Plaintiff's use of a cane would have on her ability to perform light work, and (2) the ALJ failed to include her balancing issues in the RFC and hypothetical to the VE. The Commissioner counters (1) the ALJ was not required to consider GAF scores, (2)

the ALJ's listings decision and mental RFC are supported by substantial evidence, (3) and the ALJ's treatment of Plaintiff's cane use is supported by substantial evidence.

Preliminarily, Plaintiff cited to medical records provided to the Appeals Council after the ALJ issued her decision.  Plaintiff concedes the evidence submitted to the Appeals Council should not be considered here.  (ECF No. 29, PageID.1270, n. 4); *see Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) ("evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."). Plaintiff states the information provided in the new evidence is "properly developed" in other parts of the administrative record before the ALJ.

1. Mental Impairments

a. Mental RFC

Plaintiff argues the RFC is "incomplete" because the ALJ did not mention or discuss her GAF scores and the RFC does not account for her mental impairments. She relies on *Miller v. Commissioner of Social Security*, 811 F.3d 825 (6th Cir. 2016), to support her contention the ALJ was required to discuss her GAF scores because they were consistently low (scores of 40 and 45) indicating severe impairment.  (ECF No. 20, PageID.1183-84).  Plaintiff also argues, although the

ALJ found her borderline personality disorder ("BPD") to be a severe impairment, the ALJ did not "take into account" this impairment when she assessed RFC. (*Id.* at PageID.1185-86).

In the view of the undersigned, the ALJ's mental RFC is supported by substantial evidence and adequately accounts for Plaintiff's mental impairments. The ALJ reviewed much of the medical evidence on Plaintiff's mental impairments, including the treatment notes from Northeast Guidance Center and the opinion evidence, and assessed a mental RFC limiting Plaintiff to simple, routine tasks, simple work-related decisions, and only occasional contact with co-workers, supervisors, and the general public. (ECF No. 15-2, PageID.110, 113-15). As the ALJ concluded, the treatment records do not document disabling symptoms related to Plaintiff's mental impairments.

For example, the treatment records from the Northeast Guidance Center, provide substantial evidence in support of the ALJ's decision. Plaintiff often presented to the clinic as "pleasant" but sometimes with a constructed affect. (*See, e.g.*, ECF No. 15-10, PageID.991, 1019, 1031, 1037, 1043). The first treatment note, dated January 19, 2017, includes a mental status examination. Plaintiff's attitude was cooperative; her mood euthymic; her affect within normal limits; she had immediate, recent, and distant memory; she had normal thought process and content; her attention and concentration were within normal limits; and she had

adequate judgment and impulse control.  Rather inconsistently, she was assessed a GAF score of 40 at this visit.[3]  (*Id.* at PageID.1055-58).  Her mental status was assessed a year later in January 2018.  At that time, Plaintiff had dull awareness, was distractable, had poor judgment and limited insight, paranoid thought process, and was sad and irritable.  (*Id.* at PageID.1009-10).  In November 2018, Plaintiff's mental status had improved.  While she presented with an anxious mood and blunt affect, she had adequate immediate memory, normal thought process and content, and adequate attention and concentration.  (*Id.* at PageID.978-80).  The next month Plaintiff had impaired immediate memory, but was alert, had normal concentration, good judgment, unremarkable thought process and presentation during the interview, as well as an appropriate affect.  (*Id.* at PageID.1069).  The remaining treatment notes are silent as to mental status.  It appears in all the Northeast Guidance treatment notes before the ALJ, Plaintiff's GAF score was recorded at 40.  The ALJ fashioned the RFC to account for some impairment in concentration and social interactions commensurate with the mental status examinations.

---

[3] "The DSM–IV categorizes individuals with a GAF score of 31 to 40 as having 'Some impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood.'"  *White v. Colvin*, 2014 WL 2813310, at *3 (S.D. Ohio June 23, 2014), *report and recommendation adopted*, 2014 WL 3510298 (S.D. Ohio July 14, 2014) (quoting Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 32–34)).

On February 27, 2018, Plaintiff underwent a psychological consultative exam with Dr. Robin Stone and Ms. Melissa Rosenzweig.[4]  Plaintiff alleged disability caused by depression, anxiety, headaches, and issues with her knees, back, and feet.  (ECF No. 15-9, PageID.969).  Plaintiff was cooperative during the interview.  Her emotional reaction was found to be depressed, anxious, and sad.  The examiners diagnosed "Persistent Dysthymic Depression, early onset" and "Generalized Anxiety Disorder."  (*Id.* at PageID.971).  They issued a medical source statement finding mild limitations in focus and concentration; mild limitations in the ability to understand, retain, and execute basic routine tasks; and moderate limitations in the ability to appropriately interact with the general public or respond to supervision.  (*Id.*).  The ALJ found this assessment "persuasive" as it was consistent with the medical evidence and with the reviewing psychological consultant's opinion, discussed below.[5]  (ECF No. 15-2, PageID.114).

The reviewing psychological consultant, Dr. Hampton-Aytch, issued her opinion on March 12, 2018.  Dr. Hampton-Aytch reviewed the existing records from the Northeast Guidance Center (which included the GAF scores), the

---

[4] Plaintiff and the ALJ refer to Ms. Rosenzweig as "Dr. Rosenzweig," but as a Limited License Psychologist, "Dr." is not the appropriate title.

[5] Plaintiff asserts Ms. Rosenzweig's opinion should not be credited because she did not mention Plaintiff's GAF scores.  (ECF No. 20, PageID.1184).  Ms. Rosenzweig was not a consultant who reviewed the record.  Rather, Ms. Rosenzweig met with Plaintiff, interviewed her, and provided an assessment based on that interview.  The fact that Ms. Rosenzweig did not mention prior GAF scores is not a reason to discredit the opinion.

consultative examination discussed above, Plaintiff's disability report, and other medical records.  (ECF No. 15-5, PageID.632-35).  After reviewing the records, Dr. Hampton-Aytch concluded Plaintiff was "not significantly limited" in her ability to carry out short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without distraction, to make simple work-related decisions, and to complete a normal workday without interruptions from her mental impairments.  Dr. Hampton-Aytch explained that despite Plaintiff's allegations of worsening anxiety and depression, her recall and concentration appeared fairly intact.  Regarding Plaintiff's social interaction limitations, Dr. Hampton-Aytch concluded she was moderately limited in her ability to interact appropriately with the general public but not significantly limited in the ability to get along with co-workers or respond appropriately to criticism from supervisors.  (*Id.* at PageID.640).  The ALJ found this opinion "persuasive" because it was consistent with the medical evidence and "relatively minimal findings."  (ECF No. 15-2, PageID.114).

The ALJ crafted a mental RFC that aligned with Dr. Stone and Ms. Rosenzweig's assessment and was more restrictive than Dr. Hampton-Aytch's assessment—the ALJ limited Plaintiff to simple, routine work and only occasionally interaction with others.  The RFC is supported by the state agency opinions and the treatment notes of which only a few contained impressions

concerning Plaintiff's mental status examinations.  Of those, some showed little or no impairment in areas such as concentration, judgment, and interacting with others.

As stated above, Plaintiff argues it was error for the ALJ to completely disregard her consistently low GAF scores.  A GAF score is "a clinician's subjective rating of an individual's overall psychological functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007).  Her argument is unavailing for two reasons.  First, there is no requirement that the ALJ discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  Although the ALJ did not expressly discuss the GAF scores, she cited to the records that contain the GAF scores.  What is more, the ALJ cited a specific page from a Northeast Guidance Center record, "B8F/6," which notes Plaintiff's GAF score of 40.  (*See* ECF No. 15-2, PageID.113; ECF No. 15-10, PageID.981).  Thus, the undersigned concludes that, although she did not expressly discuss the scores, the ALJ adequately reviewed and considered them.

Second, the Sixth Circuit does not require discussion of GAF scores.  The Court has held "[w]hile a GAF score may be of considerable help to the ALJ in

formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc., Sec.*, 276 F.3d 235, 241 (6th Cir.2002).  The Sixth Circuit has further held that an ALJ's failure to reference a GAF score is not, by itself, sufficient cause for remand.  *DeBoard v. Comm'r of Soc., Sec.*, 211 F. App'x 411, 415 (6th Cir.2006) ("We have previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination.") (citing *Howard*, 276 F.3d at 241).  Further, as Plaintiff concedes, the Commissioner "has declined to endorse the [Global Assessment Functioning] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [Global Assessment Functioning] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Id.* (quoting *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005)).

Though it is true the GAF scores in the record were consistently recorded as 40, this does not undermine the substantial evidence in support of the ALJ's decision.  The examining psychologist did not opine that Plaintiff was disabled, and the reviewing psychologist—who reviewed the treatment notes containing the GAF scores—did not opine Plaintiff was disabled or more limited than stated in the RFC.  Additionally, as noted previously, there is some inconsistency in the treatment records where, for example, the mental status examination was entirely

normal and Plaintiff presented as "pleasant," but was still assessed a score of 40.

While the Court must "take into account whatever in the record fairly detracts from

[the] weight" of the Commissioner's decision, *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)), "if substantial evidence supports the ALJ's decision, this Court defers to

that finding 'even if there is substantial evidence in the record that would have

supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399,

406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Ultimately, the ALJ's decision "cannot be overturned if substantial evidence, or

even a preponderance of the evidence, supports the claimant's position, so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v.

Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Here, substantial

evidence supports the ALJ's decision, thus, the decision should not be remanded.

   *Miller* does not require a different result.  That court found the ALJ's

decision "flawed in multiple respects," and appeared unsupported by substantial

evidence.  811 F.3d at 828.  The issues with the ALJ's decision included the

weight given to a non-treating physician's opinion, reliance on a distorted view of

the claimant's subjective mental complaints to disregard the GAF scores, and an

insufficient discussion of obesity.  *Id.* at 834-39.  The ALJ in that case focused on

"isolated, often stale" portions of the medical records to discount the claimant's

GAF scores.  For all these reasons, the case was remanded back to the Commissioner.  Regarding the GAF scores, the *Miller* court explained "[w]e take a case-by-case approach to the value of GAF scores."  *Id.* at 836.  But the court did not hold or imply that where the record contains consistent low GAF scores, the failure to discuss the scores requires remand.  Indeed, the ALJ in that case discussed Miller's GAF scores, but assigned them limited weight.  The assignment of limited weight appeared at odds with Miller's testimony and other record evidence, so the case was remanded.  Here, however, there is ample evidence in the record to support the ALJ's RFC assessment and ultimate conclusion of non-disability.  Even if the GAF scores were considered substantial evidence in Plaintiff's favor, because there is substantial evidence supporting the decision, the decision should be affirmed.

In her remaining argument regarding the RFC assessment, Plaintiff contends both the ALJ and Ms. Rosenzweig failed to "fully take into account" Plaintiff's borderline personality disorder.  She asserts her history of family trouble and reports of loneliness should have been accounted for in the RFC, although she did not suggest what limitations should have been included nor did she cite to record evidence suggesting BPD causes further limitation than provided for in the RFC. (ECF No. 20, PageID.1185-87).

The record does not support any additional limitations to specifically account for BPD.  The only notation of BPD in the record is the diagnosis from Northeast Guidance Center.  (*See, e.g.*, ECF No. 15-10, PageID.980).  There are no treatment notes discussing Plaintiff's BPD and no treating physician's opinion regarding the effects of BPD on Plaintiff's ability to work.  "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014).  Comparing her interpersonal struggles with common symptoms of BPD to assert the RFC should have some limitations to account for BPD is insufficient to carry her burden of proving disability.  *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder.").  Plaintiff's desire for the ALJ to extrapolate functional limitations from the BPD diagnosis and other evidence in the record is improper.  *See Ali v. Comm'r of Soc. Sec.*, 2017 WL 726665, at *11 (E.D. Mich. Jan. 20, 2017), *report and recommendation adopted*,  2017 WL 712899 (E.D. Mich. Feb. 23, 2017) ("Courts in this circuit have regularly noted that, while it is for the ALJ to weigh the medical evidence, ALJs are not qualified to interpret raw medical data, and may not 'play doctor.'").  To the extent the functional impact of

Plaintiff's BPD is represented in the treatment records and opinion evidence, as discussed above, neither the records nor the opinion evidence requires additional RFC limitations.  The RFC is supported by substantial evidence.

With regard to Dr. Stone and Ms. Rosenzweig's assessment, the undersigned finds no error.  Though it does not appear the examiners considered the BPD diagnosis (Plaintiff did not list BPD among her conditions), the examiners issued their opinion of her mental functioning based on the information collected during the in-person examination.  If Plaintiff is asserting it was error for the ALJ to rely on the opinion because the examiners did not consider the diagnosis, the assertion is unavailing.  The ALJ adequately supported her decision to find the opinion "persuasive."  As the ALJ explained, the examiners' opinion is consistent with the bulk of the treatment records and consultative opinion.  (ECF No. 15-2, PageID.114).

### b.     Listings 12.04 and 12.06

Plaintiff challenges the ALJ's finding at Step Three.  The ALJ considered the "paragraph B" criteria of listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).  A claimant satisfies the paragraph B criteria of both listings if she has extreme limitation in one, or marked limitation in two, of the following areas: understanding, remembering, or applying information; interacting with others; concentrating,

persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § Pt.

404, Subpt. P, App. 1.  The ALJ determined Plaintiff had mild limitations in

understanding, remembering, or applying information and in adapting or managing

oneself, and moderate limitation in interacting with others and maintaining

concentration, persistence, or pace ("CPP").  (ECF No. 15-2, PageID.109).

Plaintiff insists the medical records, including her low GAF scores, mandate a

finding that she has marked limitations in interacting with others, CPP, and

adapting or managing oneself, and thus is disabled.  As explained above, Plaintiff

has the burden at Step Three of the sequential analysis of putting forth evidence

establishing that she meets or equals a listing.  Therefore, to meet her burden, it is

incumbent on Plaintiff to present medical evidence establishing that she meets all

of the requirements of listings 12.04 and 12.06.  *See Sullivan v. Zebley*, 493 U.S.

521, 530-32 (1990).

Plaintiff failed to identify any medical evidence supporting a finding that she

meets or equals the criteria of paragraph B of these listings.  In an effort to

demonstrate she is markedly impaired in two or more areas, Plaintiff largely relied

on her subjective statements.  (ECF No. 20, PageID.1180-82).  She did not explain

how her statements or any of the medical records demonstrates her impairments

meet or equal either listing.  *See Howard v. Comm'r of Soc. Sec.*, 2019 WL

4281971, at *5 (E.D. Mich. Aug. 14, 2019) ("This cursory listing of documents does not satisfy Plaintiff's burden to demonstrate that he meets Listing 112.11.").

Moreover, the ALJ's Step Three decision is amply supported by the evidence.  At this step, the ALJ noted Plaintiff's complaints of limitations in the paragraph B criteria, but concluded the evidence did not warrant finding her markedly impaired in any area.  The ALJ discussed the treatment notes, which based on the foregoing discussion of the medical evidence, support a determination that Plaintiff has no more than moderate limitations.  (ECF No. 15-2, PageID.109-10).  For example, while Plaintiff cites one treatment note which indicates her concentration was "distractible," (ECF No. 15-10, PageID.1009), several other treatment notes suggest Plaintiff's concentration was within normal limits (*id.* at PageID.978-80, 1055-58, 1069).  In addition to the supporting evidence reported in the treatment notes, the ALJ relied on the opinion of State agency psychologist Dr. Hampton-Aytch's regarding the paragraph B criteria of both listings, which constitutes substantial evidence supporting the Step Three finding.[6]  (ECF No. 15-5, PageID.635-36).  Lastly, the ALJ also relied on the opinion of Dr. Stone and Ms.

---

[6] The ALJ discussed and weighed Dr. Hampton-Aytch's and Ms. Rosenzweig's opinions in the RFC analysis, not at Step Three.  However, it is well-settled that an ALJ's opinion is to be read as a whole.  *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x. 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review"); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision").

Rosenzweig who determined Plaintiff had mild limitations in focus and concentration; mild limitations in the ability to understand, retain, and execute basic routine tasks; and moderate limitations in the ability to appropriately interact with the general public or respond to supervision.  (ECF No. 15-9, PageID.971).  Notwithstanding the evidence that may support Plaintiff's position, there is substantial evidence in support of the ALJ's Step Three finding, and thus the finding should be affirmed.

### 2.    Physical RFC

Plaintiff's arguments regarding the physical RFC are related entirely to the RFC limitation allowing the use of a cane for ambulation and limiting her to occasional balancing.  Plaintiff argues the hypothetical question posed to the VE regarding her physical impairments was incomplete because it failed to include Plaintiff's need to use a cane *to balance*.  She also argues the physical RFC is inaccurate because it does not articulate the impact of using a cane for balance on the ability to perform light work.  (ECF No. 20, PageID.1188-89).

As an initial matter, the hypothetical posed to the VE was identical to the RFC in the ALJ's decision.  (*See* ECF No. 15-2, PageID.110; ECF No. 15-4, PageID.596-97).  Thus, Plaintiff's challenge to the hypothetical is actually a "veiled attack" on the RFC.  *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) (plaintiff's step five argument is a "veiled attack" on the

RFC when the hypothetical is identical to the RFC assessment); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

In the view of the undersigned, the RFC limitations with regard to Plaintiff's cane use are supported by substantial evidence. The ALJ relied in part on the minimal findings in Plaintiff's post-operative follow-up treatment notes. These treatment notes do not support Plaintiff's contention she required a cane to balance. Plaintiff underwent surgery during November 2017 to repair her broken left foot and ankle. A few months later in January 2018, though Plaintiff continued to complain of pain in her foot/ankle, her surgeon Dr. Bookout lifted restrictions and stated Plaintiff could begin to use her left foot as tolerated. (ECF No. 15-10, PageID.1109). Plaintiff next followed-up with Dr. Bookout in October 2018. She complained of pain and swelling and stated she was unable to work. (*Id.* at PageID.1107). On physical examination, however, Dr. Bookout found no swelling, normal range of motion, and only mild diffuse tenderness over the ankle joint. Dr. Bookout concluded Plaintiff's "subjective pain seems to be out of proportion to her physical exam and x-rays." Further, he stated Plaintiff had no restrictions and in his "perspective she is able to work." (*Id.* at PageID.1108). The next month, Plaintiff again complained of ankle pain and stated she could not

work.  She was walking slowly with a cane that day, but notably, she was carrying the cane rather than using it to assist ambulation.  (*Id.* at PageID.1098).  On physical examination, she had an antalgic gait, mild swelling in the ankle, and some pain with palpation in the surgical area, but normal strength in her lower extremities.  She was referred to pain management.  (*Id.* at PageID.1101-03).  The pain management specialist recommended an injection to resolve the pain, but Plaintiff refused.  (*Id.* at PageID.1097).  She only wished to continue taking opioids.  (*Id.*).  While demonstrating Plaintiff experiences pain associated with her left ankle, these surgical follow-up records do not support a limitation requiring the use of a cane for balance.

On February 27, 2018, Plaintiff underwent a consultative examination with Dr. Pierre-Paul.  As the ALJ discussed, the findings and conclusions made by the examiner are inconsistent.  Dr. Pierre-Paul found normal flexion and reflexes in Plaintiff's left ankle and lower extremities.  (ECF No. 15-9, PageID.961-62).  He described the left ankle exam as "normal" but characterized Plaintiff's gait as "unable to turn quickly."  (*Id.* at PageID.965).  Most notably, Dr. Pierre-Paul concluded "No Physical Limitations Noted."  (*Id.* at PageID.966).  Yet, he determined Plaintiff required the use of a cane to "Reduce Pain" and stated she would need to use an assistive device to maintain balance in a standing position due to abnormal gait and chronic pain.  (*Id.* at PageID.960).  The physician did not

check the box that would indicate Plaintiff "Would Fall Without Aid." (*Id.*).  Not only is Dr. Pierre-Paul's opinion internally inconsistent, it is also conflicting with the post-surgical treatment notes which do not suggest Plaintiff would require a cane to maintain balance.  In light of the relatively normal objective findings, the ALJ adopted the use of a cane for ambulation in the RFC, but considering the other evidence in the record, supportably declined to adopt the use of a cane for balance.

Relatedly, the ALJ's decision at Step Five that a sufficient number of jobs exist in the national economy which Plaintiff could perform with her RFC is also supported by substantial evidence.  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.") (citing *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)).  Where, as here, the ALJ's hypothetical question included the limitations the ALJ reasonably found credible, the ALJ could properly rely on the VE's testimony as substantial evidence that the plaintiff is able to perform jobs that

exist in significant numbers in the national economy.  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

### G.     Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 20), **GRANT** Defendant's motion for summary judgment (ECF No. 25), and **AFFIRM** the Commissioner of Social Security's decision.

## II.     PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 29, 2021                    s/Curtis Ivy, Jr.
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 29, 2021, by electronic means and/or ordinary mail.

                                         s/Kristen MacKay
                                         Case Manager